## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MADISON RABB, | ) | |
| | ) | |
| *Plaintiff,* | ) | Civil Action No.  2:25-cv-00299 |
| | ) | |
| vs. | ) | |
| | ) | |
| FISHERS OF MEN COMMUNITY | ) | |
| DEVELOPMENT CORPORATION and | ) | |
| EMMET MILES, Sr., | ) | |
| | ) | |
| *Defendants*. | ) | |
| | ) | |

### COMPLAINT IN CIVIL ACTION

Plaintiff, Madison Rabb, by and through his undersigned counsel, now files this Complaint in Civil Action against Defendants, Fishers of Men Community Development Corporation and Emmet Miles, Sr., averring as follows:

### PARTIES

1.      Plaintiff, Madison Rabb, ("Plaintiff") is an adult individual who currently resides in Amory, Mississippi 38821.

2.      Defendant, Fishers of Men Community Development Group, ("Fishers") is registered in the Commonwealth of Pennsylvania as a "domestic nonprofit corporation" formed under the laws of Pennsylvania.  Fishers maintains a registered office located at 540 Larimer Avenue, Pittsburgh, PA 15206 (the "Facility").

3.      Upon information and belief, Defendant Emmet Miles, Sr. ("Mr. Miles") (collectively, Fishers and Mr. Miles are referred to as "Defendants"), is an adult individual and the CEO and Executive Director for Fishers.  Mr. Miles' last known address is 540 Larimer Avenue, Pittsburgh, PA 15206.

## JURISDICTION AND VENUE

**A.    This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

4.    This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction"), as Plaintiff is advancing claims under the Fair Labor Standards Act 29, U.S.C. § 201, *et seq*. ("FLSA") (Plaintiff's claim arising under the FLSA is identified as the "Federal Law Claims").

5.    Plaintiff is also advancing claims under the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq*. ("MWA") the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq*. ("WPCL") (Plaintiff's claims arising under the MWA and the WPCL are identified as the "State Law Claims").

6.    This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claim and the State Law Claims share operative facts that support the corresponding causes of action within the Federal Law Claims and the State Law Claim.

7.    Further, the operative facts between the Federal Law Claim and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United State Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B.    The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

8.    Venue is proper in the United States District Court for the Western District of Pennsylvania, Pittsburgh Division (the "Western District") as a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred within this judicial district.  Therefore, venue is proper pursuant to 28 U.S.C. § 1391(b).

9. Specifically, these events and omissions occurred in Allegheny County, Pennsylvania which is one of the counties encompassed by the Western District.

10. This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Allegheny County, Pennsylvania, and conduct arising within Allegheny County is docketed within the Pittsburgh Division of the Western District pursuant to Local Rule 3 (LCvR 3).

**C.    This Court May Exercise Personal Jurisdiction Over Defendants.**

11. This Court may exercise personal jurisdiction over Defendants pursuant to 42 Pa. C.S. § 5301(a)(2), and this Court's exercise of jurisdiction comports with the Due Process Clause of the United States Constitution.

12. Personal jurisdiction is proper over a defendant if the defendant is a registered Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction pursuant to 42 Pa. C.S. § 5301. *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991)).

13. 42 Pa. C.S. § 5301 states: "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person." 42 Pa. C.S. § 5301(a). This definition is expanded to "corporations" pursuant to 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations.—
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa. C.S. § 5301(a).

14.    As discussed above, Defendant Fishers has registered itself as a domestic nonprofit corporation in the Commonwealth of Pennsylvania and thereby subjected itself to the general jurisdiction of Pennsylvania's tribunals; further, Defendant maintains the Facility in Pennsylvania and conducts business operations within Pennsylvania.  Accordingly, Defendant may properly be personally brought before this Court pursuant to 42 Pa. C.S. § 5301(a)(2).

15.     In addition, 42 Pa. C.S. § 5301(a)(1) provides for personal jurisdiction over individuals and provides:

> Persons. —
>
> (i)    Presence in this Commonwealth at the time when process is served.
> (ii)   Domicile in this Commonwealth at the time when process is served.

42 Pa. C.S. § 5301(a)(1).

16.    Upon information and belief, Mr. Miles maintains a domicile within the Commonwealth of Pennsylvania at the time of effectuation of service.  Correspondingly, this Court may exercise personal jurisdiction over Mr. Miles.

## FACTUAL BACKGROUND

17.    On or about November 2, 2023, Plaintiff commenced his employment with Defendant in the position of a "Administrative Assistant/Assistant Executive Director."

18.    Plaintiff was compensated at a salaried rate of pay of $45,000.00 per annum and routinely worked 40 or more hours per week.

**A.    Defendants Failed to Remit Wages in February of 2024.**

19.    In February of 2024, Plaintiff was scheduled for, and correspondingly worked, his routine schedule of 40 or more hours per week for an approximate total of 160 hours of

compensable time.

20.    In doing so, Plaintiff was entitled to his salaried rate of pay of $3,750.00 for his workplace efforts (the "February Wages").

21.    Curiously, despite Plaintiff's performance of the work completed at Defendants' request and to its satisfaction, Defendant declined to pay the February Wages.

22.    Confused at the lack of payment, Plaintiff contacted Mr. Miles and requested to be remitted his owed and due wages.

23.    Mr. Miles brushed off Plaintiff's request with merely stating "*I will catch you up, don't worry.*"

24.    Plaintiff did not consent to this unilateral delay but was nonetheless forced to wait for Defendants to process the February Wages.

25.    Plaintiff continued to follow up with Mr. Miles on a weekly basis as to the February Wages but Mr. Miles would merely respond that the wages were forthcoming.

26.    However, the February Wages remain outstanding to present date.

**B.    Defendants Failed to Remit Wages in March of 2024.**

27.    Plaintiff continued to work his normal scheduled shift for Defendants throughout March of 2024.

28.    During March of 2024, Plaintiff again worked approximately 160 hours to Defendants' approval and acceptance.

29.    As Plaintiff upheld his end of the employer and employee relationship, he expected to be compensated for his time worked for the benefit of Defendants (the "March Wages").

30.    However, Defendants once again failed to pay Plaintiff his owed wages.

31.    Following the first payroll period within March of 2024, Plaintiff immediately

inquired about the outstanding February and March Wages.

32.     As became routine, Mr. Miles merely provided Plaintiff with weak reassurances and empty promises it would fully remit Plaintiff's wage.

33.     On March 16, 2024, for some unknown reasons, Defendants sent Plaintiff $150.00 through a money transfer service called "Cash App."

34.     Subsequently, on March 28, 2024 and March 29, 2024, Defendants sent additional payments to Plaintiff of $100.00 and $500.00 respectively through Cash App.

35.     Notably, these payments were not representative of the $3,750.00 Defendants owed for the time worked in the month of March, nor did Defendants provide a wage statement reflecting the deduction of local, state, and federal taxes.

36.     At no time did Plaintiff consent to the deviation of Defendants' previous payroll practices.

37.     Plaintiff reiterated to Mr. Miles that he was owed both the February Wages and the March Wages since the $750.00 paid via Cash App fell woefully short of renumeration owed for the month of March.

38.     Mr. Miles' reasoning for the payment through Cash App was because "*the money from the county has not come in yet.*"

39.     Despite paying Plaintiff $750.00, Defendants failed to pay Plaintiff for all hours he worked in March of 2024 and the $3,000.00 due and owed to Plaintiff remains outstanding to present date.

**C**.     **Defendants Failed to Remit Wages in April of 2024**.

40.     Plaintiff was scheduled for and worked 40 compensable hours for each week of April 2024.

41.     In doing so, Plaintiff was entitled to his monthly wages of $3,750.00.

42.     Yet, Plaintiff only received $1,500.00 as payment for the entire month of April 2024.

43.     As he had done previously, Plaintiff reached out to Mr. Miles to address his missing wages.

44.     And once again, Mr. Miles sidestepped Plaintiff's inquiries and provided false promises to "*catch him up*" once the "*County*" paid Defendants for the services it provides.

45.     Plaintiff was forced to rely upon Defendants' assurances, however, the missing wages from April 2024 of $2,250.00 (the "April Wages") remain outstanding to present date.

**D.     Defendants Failed to Remit Wages in May and June of 2024**.

46.     This pattern and practice continued both May and June of 2024 wherein Plaintiff continued to work and continued to receive assurances from Mr. Miles that he would be compensated.

47.     However, Defendants failed to compensate Plaintiff his salaried wages in their entirety for the hours he worked for Defendants in May 2024 (the "May Wages") and June 2024 (the "June Wages").

48.     Following each payroll cycle, Plaintiff approached Mr. Miles and received only empty assurances and deflections.

49.     Plaintiff's May Wages and June Wages remain outstanding to present date.

**E.     Defendants Failed to Remit Wages in July of 2024.**

50.     In July of 2024, Plaintiff was only compensated $334.00 which Defendants transmitted through Cash App for 80 hours of work performed.

51.     Plaintiff was due a total of $1,875.00 for hours he worked in July 2024, however, the remaining outstanding wages of $1,541.00 (the "July Wages") remain unpaid to present date.

52.    As a result of the continued wage violations, Plaintiff was forced to terminate his employment with Defendants on July 12, 2024.

53.    To date, Plaintiff is owed approximately $18,041.00 as a result of the outstanding February Wages, March Wages, April Wages, May, Wages, June Wages, and July Wages (collectively referred to as the "2024 Outstanding Wages").

**COUNT I**
**FAILURE TO REMIT MINIMUM WAGES**
**IN VIOLATION OF THE FLSA**
**29 U.S.C. § 201, *et seq*.**

54.    Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

55.    Prefatorily, the FLSA mandates two minimum rates of pay for time "employees" spend dedicated to workplace operations for covered "employers" who constitute an "enterprise engaged in commerce."  29 U.S.C. §§ 206, 207.

56.    Relevant here, the FLSA dictates a minimum rate of pay for any hours worked such that no employee is compensated less than seven dollars and twenty-five cents ($7.25) per hour. 29 U.S.C. § 206.

57.    The FLSA defines the term "employer" expansively to include "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).

58.    In interpreting this broad phrase, the United States Court of Appeals for the Third Circuit concluded that liability for violations of the FLSA clearly attaches to the corporate entity itself, here, Defendant. See *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 153 (3d Cir. 2014).

59.    Somewhat relatedly, the FLSA defines "employ" to mean "to suffer or permit to work."  29 U.S.C. § 203(g).

**A.    Defendants are "Employer[s]" Pursuant to 29 U.S.C. § 203.**

60.    Defendants extended a position-for-hire to Plaintiff with specified duties and work hours.

61.    Defendants also possessed ultimate authority and control over Plaintiff and instructed Plaintiff to perform certain tasks for the financial benefit of Defendants.

62.    At all times relevant hereto, Defendants exercised a position of power and authority over Plaintiff begetting that of an "employer" role in the relationship.

63.    At all times pertinent hereto, Defendants also controlled the general terms and conditions of Plaintiff's workplace duties, dictated the compensation structure and scheme, and mandated the wage keeping practices that Plaintiff was subjected to as a condition of employment.

64.    As a business entity responsible for the acts of its employees and/or agents acting within the scope of their authority, Defendants "permitted" Plaintiff to work and thus "employed" Plaintiff per 29 U.S.C. § 203(g).

65.    As such, Defendants were "employer[s]" pursuant to 29 U.S.C. § 203(d) vis-à-vis Plaintiff and is therefore liable for violations of the FLSA.

**B.    Defendant Fishers is an "Enterprise Engaged in Commerce" Pursuant to 29 U.S.C. § 206.**

66.    Pursuant to 29 U.S.C. § 203(s)(1), the mandates of the FLSA apply to an organization/enterprise that satisfies two statutory criteria: (1) it must be engaged in "commerce," and (2) have an annual gross volume of sales not less than $500,000.00.  *Id*.

67.    Under the FLSA, the term "commerce" is specifically defined to include activities such as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).

68.    In elaborating on the term "commerce," the Third Circuit concluded in *Marshall v.*

*Brunner*, 668 F.2d 748, 751 (3d. Cir. 1982), that an employer's use of out-of-state manufactured equipment which the employer transported in-state for its operations was sufficient to establish that the employer was an "enterprise engaged in commerce" under the FLSA.

69.    Upon information and belief, Defendant Fishers purchased materials, supplies, and equipment necessary and integral for its business operations to and from out-of-state vendors for the express purpose of utilizing said materials, supplies, and equipment for its business operations within the Commonwealth of Pennsylvania.

70.    Additionally, as part of its routine business practice, Defendant Fishers transmitted and received payments and credits from out-of-state venders by and through the use of the internet, digital payment processing services that traverse state lines, and through interstate mail via the United States Postal Service.

71.    Therefore, Defendant Fishers regularly engaged in "commerce" sufficient to satisfy the first prong of 29 U.S.C. § 203(s)(1)(A)(i).

72.    Upon information and belief, Defendant Fishers has an annual dollar volume of business in excess of $500,000.00 given the nature, size, scope, industry, and frequency of services that it has effectuated throughout Pennsylvania.

73.    Therefore, Defendant Fishers satisfies the second prong of 29 U.S.C. § 206(s)(1)(A)(i).

74.    Accordingly, Defendant Fishers is an "enterprise engaged in commerce" within the purview of 29 U.S.C. § 206(s)(1).

75.    Given Defendants' status as "employer[s]," Defendants were mandated to comply with the minimum rate of pay, and record keeping requirements of the FLSA pursuant to 29 U.S.C. §§ 206 and 211.

**C.    Plaintiff was an "Employee" Within the Scope of 29 U.S.C. § 203.**

76.    The FLSA defines "employee" to include any individual "employed by an employer" and excludes certain circumstances that are inapplicable to the instant facts.  29 U.S.C. § 203(e)(1).

77.    To effectuate the remedial purpose of the FLSA, the Third Circuit interprets "employee" in an "exceedingly broad" manner. *Safarian v. Am. DG Energy Inc*., 622 F. App'x 149, 151 (3d Cir. 2015), citing *Martin v. Selker Bros*., 949 F.2d 1286, 1293 (3d Cir. 1991).

78.    In evaluating whether an individual is an "employee" under the FLSA, the Third Circuit examines the "economic reality" surrounding the workplace relationship and utilizes six factors to determine an individual's employment status:

> 1)the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Martin*, 949 F.2d at 1293, quoting Donovan v. DialAmerica Mktg., Inc., 757 F.2d 1376, 1382 (3d Cir. 1985).

79.    At all times relevant hereto, Defendants possessed and, in fact, exercised its rights to control Plaintiff's job duties, namely with respect to their decisions and directives concerning where, how, and when Plaintiff was to work as a laborer.

80.    Defendants also exerted significant control over the manner in which Plaintiff performed his workplace duties, instructing him in a precise manner regarding the subtasks that he had to effectively perform said duties. Further, Defendants delineated the methodologies involved in the completion of Plaintiff's duties, denoted his expected rate of productivity, dictated the speed in which Plaintiff was to complete his tasks, and designated the specific projects on which Plaintiff

was to perform.

81.    At all times relevant hereto, Plaintiff agreed to contribute his time and energy to complete meaningful workplace duties for the financial benefit of Defendants.

82.    Plaintiff agreed to complete these duties in exchange for financial remuneration and Plaintiff's completion of these duties was never met with objection from Defendants.

83.    Given Defendants' lack of objection to Plaintiff's completion of duties, Defendants permitted Plaintiff to work within the definition of "employ" pursuant to 29 U.S.C. § 203(g).

84.    Additionally, aided by the six factors enumerated within *Donovan*, delineated above, it becomes even more evident that Plaintiff was an "employee" within the purview of 29 U.S.C. § 203(e)(1).

85.    Defendants exerted significant control over the manner in which Plaintiff performed his workplace duties.

86.    Defendants delineated the methodologies involved in the completion of Plaintiff's duties, the rate of productivity and the speed at which Plaintiff was to complete his tasks, and designated the specific space in which Plaintiff was to perform his tasks.

87.    Plaintiff possessed no meaningful opportunity for profit nor any financial risk of loss depending on his skill given he was compensated at a determined hourly rate; all the compensation that Defendants disbursed to Plaintiff was derived from hours recorded by Defendants and its wage payment practices, and Plaintiff was dependent on this scheme of compensation for his pay.

88.    Although the completion of Plaintiff's workplace tasks did not require any talents unique, the workplace duties of which Plaintiff completed were an integral component of Defendants' day-to-day operations.

89.     Plaintiff worked for Defendants from November 2, 2023, to July 12, 2024 in a capacity that regularly involved Plaintiff dedicating a minimum of forty hours per week to Defendants' operations.  Plaintiff's employment was not limited by a specific duration or term of employment.

90.     As the factors above readily illustrate, the reality of the circumstances surrounding Plaintiff and Defendants' interactions plainly indicate that Plaintiff was an "employee" for Defendant within the scope of 29 U.S.C. § 203.

**D.      Plaintiff was Denied a Minimum Rate of Pay Pursuant to 29 U.S.C. § 206.**

91.     Consequently, given Defendants' joint status as an "employer" and an "enterprise engaged in commerce," and Plaintiff's status as an "employee," Defendants were obligated to comply with the minimum rate of pay requirements of the FLSA.

92.     That is, at all times hereto, Defendants were mandated to pay Plaintiff at least $7.25 for each and every hour that he worked.  29 U.S.C. § 206.

93.     As previously averred in this Complaint, from February 2024 through July 2024, Plaintiff consistently worked a minimum of 40 hours of compensable work time that he expended and that Defendants were legally obligated to compensate him at the standard minimum rate of $7.25 per hour.

94.     However, Defendants explicitly refused to pay Plaintiff the minimum rate of pay as above-mentioned.

95.     Instead, Defendants effectuated schemes wherein Plaintiff was not paid any wages whatsoever for the number of hours that Plaintiff worked in February, May, and June of 2024.

96.     Further, Defendants only paid Plaintiff approximately $4.67 per hour worked in March of 2024, approximately $6.25 per hour worked in April of 2024, and approximately $4.18 per hour worked in July of 2024.

97.     Therefore, Defendants violated 29 U.S.C. § 206(a)(1) in failing to pay Plaintiff any wages, much less the minimum rate of pay for all hours worked for Defendants.

**E.      Plaintiff is Entitled to Liquidated Damages, Attorney Fees, and Costs.**

98.     29 U.S.C. § 216(b) of the FLSA provides that when an employer violates 29 U.S.C. § 207(a)(1), an employee may collect liquidated damages in an amount equal to the amount of wages that are due and owing and, additionally, an award of attorney's fees.

99.     An award of liquidated damages pursuant to the FLSA is not penal in nature, but rather, is viewed as a compensatory remedy. *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991) (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942)).

100.    Indeed, the Supreme Court of the United States has opined on the compensatory nature of this remedy, describing it as compensation for the "workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Schonewolf v. Waste Mgmt., Inc.*, No. 17-3745, 2018 BL 92619, at *5 (E.D. Pa. Mar. 19, 2018) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945)).

101.    Furthermore, the award of liquidated damages is mandatory unless an employer can make a "showing of good faith and reasonable grounds for its conduct." *Martin*, 949 F.2d at 1299.

102.    Defendants' willful and knowing actions were the direct and proximate cause that resulted in violations of Plaintiff's rights under the FLSA, deprivation of the statutorily required overtime rate of pay, and the total amount of Plaintiff's damages.

103.    Defendants are unable to meet its burden of establishing "good faith and reasonable grounds" for its violation of Plaintiff's rights, as demonstrated by Defendants' willful animus in flagrantly disregarding its responsibilities and obligations as an employer.

104.    Therefore, Defendants are liable to Plaintiff for actual damages (lost wages),

14

liquidated damages, as well as reasonable attorneys' fees, costs, and expenses pursuant to 29 U.S.C.

§ 216(b).

105.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic and pecuniary loss in forms including, but not limited to, the deprivation of lawfully owed wages.

106.    WHEREFORE, Plaintiff, Madison Rabb, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT II**
**FAILURE TO PAY MINIMUM WAGES IN**
**VIOLATION OF THE MWA**
**43 Pa. Stat. § 333.101, *et seq.***

107.    Plaintiff incorporates the allegations contained in the paragraphs above, as if fully set forth at length herein.

108.    The MWA defines "wages" to mean compensation due to any employee by reason of his or employment.  43 P.S. § 333.103(d).

109.    The MWA further establishes a minimum rate for the compensation of any "wages for all hours worked." 43 P.S. § 333.104(a).  The minimum rate established under the MWA mirrors the FLSA's minimum rate of pay where the FLSA offers greater compensation to employees.  43 P.S. § 333.104(a.1).

110.    The MWA delineates a minimum rate of pay of seven dollars fifteen cents ($7.15) per hour beginning July 1, 2007. 43 P.S. § 333.104(a)(8).

111.    98. The FLSA delineates a minimum rate of pay of $7.25 per hour and therefore controls the current minimum rate of pay within the Commonwealth of Pennsylvania. 29 U.S.C. § 206(a)(1)(C); 43 P.S. § 333.104(a.1).

**A.    Defendants are "Employer[s]" Under the MWA.**

112.    Nearly identical to the pertinent provision of the FLSA, the MWA defines "employer" to include "any association, corporation, individual, partnership," or "any person or group or persons acting, directly or indirectly, in the interest of an employer in relation to any employee." 43 P.S. § 333.103(g).

113.    Analogous to the case law interpreting the FLSA, the definition of "employer" is expansively construed within the MWA to render a corporate entity per se liable for violations of the MWA. See *Schneider v. IT Factor Prods.*, 2013 BL 341183, at *4 (E.D. Pa. Dec. 10, 2013), citing *Scholly v. JMK Plastering, Inc.*, 2008 BL 141013, at *4 (E.D. Pa. June 25, 2008).

114.    Defendant Fishers is a business entity organized under the laws of the Commonwealth of Pennsylvania, by and through which individuals are employed for a commercial purpose and the financial benefit of Defendants within the state of Pennsylvania.

115.    Further, as previously averred in this Complaint, and for the same reasons Defendants are "employer[s]" for purposes of the FLSA, Defendants are also "employer[s]" for purposes of the MWA.

**B.    Plaintiff is an "Employee" Under the MWA.**

116.    The MWA defines "employe[e]" to include "any individual employed by an employer." 43 P.S. § 333.103(h).

117.    In line with its FLSA counterpart, the definition of "employ" is broadly defined as to "suffer or permit to work." 43 P.S. § 333.103(f).

118.    In determining whether an individual is an "employee" within the MWA, the Commonwealth Court has held the "economic reality test" utilized within the framework of the FLSA is the applicable standard for making such a determination under the MWA. *Commonwealth v. Stuber*, 822 A.2d 870, 873 (Pa. Cmwlth. Ct. 2003).

119.    As previously averred in this Complaint, and for the same reasons Plaintiff is an "employee" for purposes of the FLSA, Plaintiff is also an "employee" for purposes of the MWA.

120.    Consequently, given Defendants' status as "employer[s]" and Plaintiff's status as an "employee," Defendants were obligated to comply with the minimum wage requirements of the MWA.

121.    However, as averred above, Defendants explicitly refused to pay Plaintiff any wages for the hours that he worked in February, May, and June of 2024, and refused to pay Plaintiff the minimum rate of pay for all hours worked in March, April, and July of 2024.

122.    Defendants have therefore violated 43 P.S. § 333.104(c).

**C.    Plaintiff is Entitled to Actual Damages, Attorney Fees, and Costs.**

123.    In addition, the MWA provides for the recovery of attorney's fees and costs when an employer fails to pay an employee in accordance with Section 4(c) of the MWA. 43 P.S. § 333.113.

124.    Therefore, Defendants are liable to Plaintiff for actual damages (lost wages), as well as reasonable attorney's fees, costs, and expenses pursuant to 43 P.S. § 333.113.

125.    WHEREFORE, Plaintiff, Madison Rabb, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

<u>**COUNT III**</u>
**FAILURE TO REMIT WAGES**
**IN VIOLATION OF THE WPCL**
**43 P.S. § 260.1, *et seq.***

126.    Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

127.    The WPCL provides the employee with a statutory remedy to enforce his rights where an employer breaches its fundamental contractual obligation to pay wages owed to said employee. *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

128.    The "contract" between the employer and the employee governs the determination of the specific wages earned by the employee.  *Id*. (citing *Sendi v. NCR Comten, Inc.*, 800 F.2d 1138 (3d Cir. 1986)).

129.    This statutory remedy created by the WPCL creates both a private cause of action to any employee to whom "any type of wages" are owed and bestows "any court of competent jurisdiction" with the power to maintain such an action.  43 P.S. § 260.9a(b).

130.    To recover under the WPCL, a plaintiff must demonstrate: (1) a contractual entitlement; (2) to compensation from wages; and (3) a failure to pay that compensation." *Carlson v. Qualtek Wireless LLC*, No. 22-125, 2022 BL 277728, at *14 (E.D. Pa. Aug. 10, 2022).

131.    Further, an employee must establish "an implied oral contract between the employee and the employer".  *Id.*

132.    The WPCL defines an employer to include every person, association, or corporation and, further, "any agent or officer of any [corporation] employing any person in this Commonwealth."

133.    Defendant Fishers is a business "association" and/or "corporation" that employs individuals, including Plaintiff, within the geographical boundaries of the Commonwealth of Pennsylvania and, therefore, is an "employer" under 43 P.S. § 260.2a.

134.    As averred above, and for the same reasons Defendants are "employer[s]" for purposes of the FLSA and the MWA, Defendant is also an "employer" for purposes of the WPCL.

135.    As averred repeatedly throughout this Complaint, Defendants and Plaintiff have effectuated an employment relationship, whereby Plaintiff was an "employee." This factual reality remains true for purposes of the WPCL as well.

**A.      Plaintiff and Defendants Engaged in a Contract for Plaintiff's Employment in Exchange for a Salaried Rate of Pay.**

136.    On or about November 2, 2023, Plaintiff and Defendants both agreed, verbally, to enter into an employment contract wherein Plaintiff would provide services and Defendants, following receipt of these services, would compensate Plaintiff on a salary basis of $45,000.00 per annum.

137.    Subsequently, both Plaintiff and Defendants accepted the terms of the employment contract wherein Plaintiff began performing his workplace activities and correspondingly Defendants compensated Plaintiff at the compensation rate described above.

**B.      Plaintiff Has Accrued Owed Compensation from Defendants in the Form of "Wages."**

138.    Plaintiff has sufficiently accrued "wages" within the purview of 43 P.S. § 260.2a, because he engaged in the performance of workplace duties for Defendant in exchange for compensation of $3,750.00 per month for the time Plaintiff expended in performance of said duties.

**C.      Defendants Have Failed to Remit Plaintiff his Owed Wages.**

139.    As averred hereinabove, Plaintiff never consented or otherwise agreed to not being rightfully compensated for the time he expended for Defendants' benefit.

140.    To date, Plaintiff has not been compensated these wages.

**D.      Plaintiff if Entitled to Liquidated Damages, Attorney Fees, and Costs.**

141.    Section 260.10 of the WPCL permits an award of liquidated damages equal to 25% of the underlying amount of wages that are due and owing to an employee when an employee fails to pay the wages that are due and owing within 30 days of the Established Payday Procedure and the employer does not lodge a good faith contest or dispute.  43 P.S. § 260.10.

142.    Here, Defendants did not provide Plaintiff written notice of disputed wages

pursuant to 43 P.S. § 260.6.

143.    The WPCL imposes a duty on each employer to pay its employees all wages due and owing on established regular paydays (the "Established Payday Procedure"), which is to be designated in advance by the employer.  43 P.S. § 260.3(a).

144.    Accordingly, per the above statutory provisions, Defendants were legally obligated to provide Plaintiff with his owed wages when he was not paid those wages for thirty (30) days beyond its Established Payday Procedure.

145.    Defendants' Established Payday Procedure was the disbursement of employee pay on a bi-weekly basis.

146.    By omission, Defendants have refused to pay Plaintiff all wages due and owing to him well beyond thirty (30) days of the date of the Established Payday Procedure.

147.    As previously stated, the 2024 Outstanding Wages were, are, and continue to be owing.

148.    To date, Defendants have not paid Plaintiff the above-mentioned wages that are due and owing to Plaintiff.

149.    Additionally, Defendants have not asserted (and cannot assert) a good faith contest or dispute as to the amount of Plaintiff's disbursed wages.

150.    The actions described hereinabove were the direct and proximate cause that resulted in violations of Plaintiff's rights under the WPCL, deprivation of his statutory entitlement to accrued wages, and the total amount of Plaintiff's damages.

151.    Consequently, Plaintiff is entitled to an award of liquidated damages pursuant to 43 P.S. § 260.10.

152.    Moreover, 43 P.S. § 260.9a(f) mandates that where a plaintiff obtains a favorable

judgment, the plaintiff is entitled, as a matter of right, to an award of attorney's fees. 43 P.S. § 260.9a(f).

153.    As such, Plaintiff is also entitled to reasonable attorney's fees pursuant to 43 P.S. § 260.9a(f) that were incurred as a result of redressing the conduct described hereinabove.

154.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered tangible economic and pecuniary loss in forms including, but not limited to, the deprivation of lawfully owed wages.

155.    WHEREFORE, Plaintiff, Madison Rabb, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT II**
**UNJUST ENRICHMENT**
**IN VIOLATION OF PENNSYLVANIA COMMON LAW**

156.    Plaintiff incorporates the above paragraphs, as if fully set forth at length herein.

157.    Pennsylvania recognizes the equitable doctrine of unjust enrichment wherein the courts may imply a "quasi contract" and require a defendant to compensate the Plaintiff for the value of the benefit conferred.  *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619 (E.D. Pa. 2003) (citing *Crawford's Auto Center v. State Police*, 655 A.2d 1064, 1070 (Pa. Cmwlth. 1995)).

158.    A plaintiff must show three elements to prove a cause of action of unjust enrichment: (1) a benefit conferred on a defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits by the defendant under such circumstances that it would be inequitable for the defendant to retain the benefit without paying its value.  *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999) (citing *Schenck v. K.E. David, Ltd.*, 666 A.2d 327 (Pa. Super. 1995)).

**A.    Plaintiff Conferred a Benefit Upon Defendants by Performing His Workplace Duties, and Defendants Appreciated the Benefit Plaintiff Conferred.**

159.    Plaintiff conferred a benefit to Defendants by performing workplace duties and devoting hours of work that directly resulted in the financial benefit of Defendants' enterprise.

160.    Plaintiff's performance of work hours was materially induced and premised on Defendants' representations that Plaintiff's compensation scheme entitled him to regular pay.

161.    Defendants correspondingly appreciated the benefit of Plaintiff's workplace efforts in that Plaintiff performed various workplace tasks that financially benefited Defendants.

**B.    Defendants Accepted the Benefits Plaintiff Conferred, and it is Inequitable for Defendants to Retain Those Benefits Without Compensating Plaintiff.**

162.    Defendants retained and accepted the benefit of Plaintiff's labor and services without issue, objection, or delay.

163.    By accepting Plaintiff's labor and services, and not paying Plaintiff his due wages expended in performing the labor and services, Defendants have been unduly enriched.

164.    As a matter of justice, it would be manifestly unjust and inequitable for Defendants to retain the benefit of that labor and those services without paying Plaintiff due compensation.

165.    Defendants' actions described hereinabove were the direct and proximate cause of Defendants' unjust enrichment and the damages it owes Plaintiff for retaining a benefit without paying for its value.

166.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiff has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits and is entitled to recoup the amount of the benefit he conferred upon Defendants and which Defendants were unjustly retained.

167.    WHEREFORE, Plaintiff, Madison Rabb, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## JURY DEMAND

168.    Plaintiff demands a trial by jury on all matters so triable.

### *AD DAMNUM* CLAUSE

169.    For the above-stated reasons, Plaintiff, Madison Rabb, respectfully requests this Honorable Court to enter judgment in his favor, and against Defendants, Fishers of Men Community Development Corporation and Emmet Miles, Sr., and prays for relief as follows:

a.    Declare and find that Defendants committed one or more of the following acts:

    i.    Violated provisions of the FLSA by failing to pay Plaintiff at the minimum rate of pay and did so willfully;

    ii.    Violated provisions of the MWA in failing to pay Plaintiff at the minimum rate of pay and did so willfully; and

    iii.    Violated provisions of the WPCL in failing to remit wages to Plaintiff and did so willfully;

    iv.    Were unjustly enriched at Plaintiff's expense;

b.    Award unpaid minimum wages at the statutorily-designated rate of pay and/or unpaid wages at Plaintiff's contractual hourly rate, and other compensation denied or lost to Plaintiff to date by reason of the unlawful acts described in this Complaint;

c.    Award liquidated damages on all compensation due and accruing from the date such amounts were due in equal amounts pursuant to Plaintiff's unpaid minimum wages and/or contract wages pursuant to the FLSA, MWA, and/or the WPCL;

d.      Award pre-judgment and post-judgment interest where accorded by law;

e.      Award reasonable attorney's fees and costs of suit incurred prosecuting these claims;

f.      Award injunctive and other equitable relief as provided by law; and

g.      Award such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date:  February 28, 2025          By: */s/ Cynthia A. Howell*
                                      Erik M. Yurkovich, Esq. (Pa. I.D. No. 83432)
                                      Cynthia A. Howell, Esq. (Pa. I.D. No. 325662)

                                      The Workers' Rights Law Group, LLP
                                      Foster Plaza 10
                                      680 Andersen Drive, Suite 230
                                      Pittsburgh, PA 15220
                                      Telephone: 412.910.9592
                                      Facsimile: 412.910.7510
                                      kyle@workersrightslawgroup.com
                                      erik@workersrightslawgroup.com
                                      cynthia@workerrightslawgroup.com

                                      *Counsel for Plaintiff, Madison Rabb*

## <u>VERIFICATION</u>

I, Madison Rabb, have read the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief. I understand that this verification is made subject to the penalties of 18 Pa. C.S.A. 4904 relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.


Dated: 02 / 28 / 2025                                    _____
                                                              Plaintiff, Madison Rabb

Doc ID: d3c794424b54430000721e28d15ce2d4dd6b54d9